Douglas Arthur COLE, Individually and as a Representative of Underwriters at Lloyd's, London, England, subscribing Policy No. 77380, Plaintiff,

v.

RISS & COMPANY, Incorporated, a Colorado Corporation, Defendant.

Civ. A. No. 9125.

United States District Court, W. D. Missouri, W. D.

Oct. 12, 1954.

See also 16 F.D.R. 116.

Albert Thomson of Davis, Thomson, Van Dyke & Fairchild, Kansas City, Mo., for plaintiff.

Don M. Jackson of Gage, Hillix, Moore, Park & Jackson, Kansas City, Mo., for defendant.

WHITTAKER, District Judge.

This matter is now before me upon defendant's motion, under Rule 12(f), Fed.Rules Civ.Proc. 28 U.S.C.A., to strike Counts I and II from, and for a more definite statement, under Rule 12(e), of plaintiff's second amended complaint.

Understanding of these matters will require a brief summarization of the second amended complaint. Omitting formal and jurisdictional matter, and reduced to essence, it says that plaintiff and those whom he represents (hereinafter called plaintiff), issued a fidelity bond to defendant, No. 77380, which was effective from March 1, 1947, to March 1, 1950, and indemnified defendant against loss sustained by reason of "theft, larceny, embezzlement or any other dishonest, fraudulent or criminal act of any one or more employees"; that on December 10, 1949 defendant notified plaintiff's agent of unlawful acts of two of its employees, Wells and Ebeling, resulting in loss to defendant within the terms and period of said bond, but that restitution was promised and formal claim would be made only if restitution was not forthcoming; that restitution was not made but, rather, on December 16, 1949, Wells and Ebeling sued defendant in the state court of Jackson County, Missouri, under cause No. 540,867, for a sum in excess of $1,000,000, for alleged breach of contract; that defendant filed answer to that complaint, "and at the request of the underwriters (the plaintiffs here) added a counterclaim setting up its claim against the two former employees (the plaintiffs there) for the pecuniary loss suffered by their wrongful acts", apparently in the amount of $15,-863.97; that meanwhile defendant, Riss & Company, was demanding payment from the underwriters, the plaintiff, of the $15,863.97 loss "under the bond", but "which loss the underwriters refused to pay until the issue in the suit by Wells and Ebeling and Riss & Company, Inc., had been decided on the merits and the indebtedness fixed"; that, nevertheless,

"the underwriters thereafter, on January 15, 1951, loaned to the defendant the sum of $15,863.97 subject to repayment pursuant to the terms of a loan receipt." That loan receipt is attached as an exhibit, and reads:

"Loan Receipt

$15,863.97      Kansas City, Missouri
January 15th, 1951

"Received from Mendes & Mount, Attorneys, 27 William Street, New York 5, N. Y., for the account of those certain Underwriters at Lloyd's, London, subscribing Policy No. 77380, the sum of Fifteen Thousand Eight Hundred Sixty-three and 97/100 ($15,863.97) Dollars, as a loan repayable in full, without interest, to Mendes & Mount for the account of aforesaid Underwriters in the event an action at law titled, 'Leland Wells, et al., vs. Riss & Company, Inc.,' now pending in the Circuit Court of Jackson County, Missouri, designated in the records of said court as Case No. 540,867, shall result in a final judgment adverse to Riss & Company, Inc. and in favor of any of the plaintiffs in said action; or, in the event said action shall result in a final judgment against the plaintiffs and in favor of Riss & Company, Inc., then this loan shall be repayable only to the extent of any net recovery Riss & Company, Inc. may make or obtain from any or all of the said plaintiffs, their heirs, successors or assigns, plus such amount, if any, as may equal the difference between $15,863.97 and the amount to which Riss & Company's counterclaim in said action may be reduced by the court or jury or by settlement out of court.

"Nothing in this agreement shall obligate the Underwriters to lend or to pay Riss & Company, Inc. a sum greater than $15,863.97

Riss & Company, Inc.
By R. B. Riss
President";

That, on December 31, 1952, the parties to that suit made, signed and filed, in said

state court, a stipulation for dismissal of that cause, which, omitting caption and signatures of counsel, was as follows:

"Come now the plaintiffs and voluntarily dismiss the cause of action asserted by them herein against all defendants, said dismissal to be with prejudice to any further and future action herein asserted.

"Comes now the defendant, Riss & Company, Inc., and voluntarily dismisses the counterclaim asserted herein by it against the above plaintiffs with prejudice to any further and future action on the cause herein asserted in said counterclaim.

"The costs which have arrived in this action are to be paid by defendants at the time of filing hereof";

That, upon the basis of that stipulation said state court, on December 31, 1952, entered the following in its minutes:

"Now on this day it is ordered and adjudged by the Court that plaintiffs' petition, and counterclaim of defendant, Riss & Company, Inc., be and the same are hereby dismissed per dismissal this day filed herein (costs paid)."

That the claim of Wells and Ebeling, set forth in their petition in said state court, against defendant, Riss & Company, "was reasonably worth in excess of $15,863.97, and thus the defendant has been unjustly enriched by that amount;" that the "settlement" (set forth in the stipulation) "resulted in a final judgment" in the cause against Wells and Ebeling and in favor of Riss & Company on the petition, and "resulted in a final judgment" against Riss & Company and in favor of Wells and Ebeling on the counterclaim, and the first count concludes, saying that "under the terms of the loan receipt * * * plaintiff is entitled to judgment against the defendant for the sum of $15,863.97 plus interest thereon from December 31, 1952."

Count II merely alleges the foregoing and says "in the alternative, under the terms of the bond * * * the plaintiff is entitled to judgment against defendant for the sum of $15,863.97 plus interest thereon from December 31, 1952."

Count III merely alleges the foregoing and says "in the alternative, the defendant has rid itself of the claims of two employees worth in excess of $15,863.97 by dismissing a valid claim held against those two employees for funds taken from the defendant, and thus the defendant has unjustly enriched itself at the expense of the underwriters in the sum of $15,863.97, and the plaintiff is therefore entitled to judgment against the defendant for the sum of $15,863.97 plus interest thereon from December 31, 1952."

The grounds of defendant's motion to strike Counts I and II are the same, namely, that they do not set up a legal or enforcible claim and should, therefore, be stricken as "redundant and immaterial" under Rule 12(f) (I believe the motions may, more properly, be treated as motions to dismiss those counts for failure to state a claim upon which relief can be granted under Rule 12(b) (6), and I now treat with those matters.

It is evident that Count I seeks recovery under the terms of the "loan receipt." That instrument is most ambiguous and uncertain, yet there is no count here to reform that instrument, nor is there any allegation that it does not truly set forth the real agreement of the parties on the subject, but plaintiff merely seeks recovery on the ambiguous instrument as it stands. It will be noted that the instrument is really in two parts, or, at least, contemplated only two contingencies or results. The first says that the loan is to be "repayable in full, without interest * * * in the event the action" of Wells v. Riss & Company, No. 540,867, in said state court, "shall result in a final judgment adverse to Riss & Company, Inc., and

in favor of any of the plaintiffs in said action." The second says that "in the event said action shall result in a final judgment against the plaintiffs and in favor of Riss & Company, Inc., then this loan shall be repayable only to the extent of any net recovery Riss & Company, Inc., may make or obtain from any or all of the said plaintiffs, plus such amount, if any, as may equal the difference between $15,863.97 and the amount to which Riss & Company's counterclaim in said action may be reduced by the court or jury, or by settlement out of court."

■ I believe that the minutes entered by the state court on December 31, 1952, in pursuance of the stipulation of the parties of that date, amounts to a final judgment of the court. Note that it says "it is ordered and adjudged by the Court that plaintiffs' petition, and counterclaim of defendant, Riss & Company, Inc., be and the same are hereby dismissed per dismissal this day filed herein." That order finally determined and disposed of the cause and, hence, amounted to a judgment. That the judgment was entered by agreement or upon stipulation does not impugn its character nor finality as a judgment, Allen v. Fewel, 337 Mo. 955, 87 S.W.2d 142; Short v. Taylor, 137 Mo. 517, 38 S.W. 952; Casler v. Chase, 160 Mo. 418, 60 S.W. 1040; Robinson v. Seay, 175 Mo.App. 713, 158 S.W. 409, but the more serious question is: was that judgment "adverse" to Riss & Company, Inc., and in favor of Wells and Ebeling, within the meaning of the first covenant of the loan receipt? In very truth that judgment was in favor of Riss & Company and against Wells and Ebeling on the complaint which sought more than $1,000,000. It was against, and hence "adverse" to, Riss & Company, Inc., and in favor of Wells and Ebeling only on the counterclaim. It cannot, therefore, be said that the judgment in the "action" of Wells v. Riss & Company resulted in a final judgment "adverse" to Riss & Company any more than it can be said that the judgment resulted favorably to Riss & Company, within the language of said first covenant of the loan receipt. It has to follow that plaintiff does not state a claim upon which relief can be granted under, or within the language of, said first covenant of the loan receipt.

■ I pass now to a consideration of the second covenant in the loan receipt. And I am immediately met with the same problem as under the first covenant, for, again, no court could say that the judgment actually rendered by the state court was "against the plaintiffs and in favor of Riss & Company, Inc.", any more than it could say that said judgment was against Wells and Ebeling and in favor of Riss & Company, Inc., for, in very truth, the judgment was in favor of both and against both. It was in favor of Riss & Company on the plaintiffs' complaint and in favor of the plaintiffs on Riss & Company's counterclaim. Again it has to follow that plaintiff does not state a claim under the second covenant of the loan receipt, as it now stands, upon which relief could be granted.

I am, therefore, forced to conclude that defendant's motion attacking Count I of plaintiff's second amended complaint, treated either as a motion to strike under Rule 12(f) or as a motion to dismiss the count under Rule 12(b)(6), is good and must be sustained.

I now give attention to defendant's motion to strike Count II of plaintiff's second amended complaint. It will be remembered that in Count II plaintiff, as an alternative, seeks recovery "under the terms of the bond set out as Exhibit A." It will be remembered that in numbered paragraph 9 of the first count, adopted by reference in the second count, plaintiff says that defendant was demanding payment of the loss "under the bond" but that "the underwriters refused to pay." And there is no allegation any place in the complaint that

the underwriters ever "paid"; rather, the allegation is that they made a "loan" to defendant of the $15,863.97. A loan by an insurer to an insured is a very different thing from payment under the bond. Dixey v. Federal Compress & Warehouse Co., 8 Cir., 132 F.2d 275; Luckenbach v. W. J. McCahan Sugar Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170. Plaintiff, therefore, not having "paid" anything under the bond, states no basis for recovering anything from defendant under the bond.

It follows, in my opinion, that defendant's motion attacking Count II of the complaint, treated either as a motion to strike under Rule 12(f) or as a motion to dismiss the count under Rule 12(b) (6), is good and must be sustained.

This leaves for consideration only Count III of the complaint. As previously stated, it seeks recovery, alternatively, upon an allegation that defendant "has rid itself of the claims of two employees worth in excess of $15,863.97 by dismissing a valid claim held against those two employees", and has thus "unjustly enriched itself at the expense of the underwriters in the sum of $15,863.97." Defendant moves for a more definite statement of that count under Rule 12(e). I believe that the facts are sufficiently set forth and that the count is not subject to that motion. The question in my mind, though not raised by defendant—and for that reason not ruled by me—is whether that count states a claim upon which relief could be granted. As this is a question we must ultimately meet, perhaps it would be appropriate to indicate my present thoughts on the matter. Plaintiff's theory appears to be that defendant, in inducing the stipulation that resulted in the judgment disposing of the complaint of Wells and Ebeling, used in exchange, and extinguished without plaintiff's consent, the counterclaim against Wells and Ebeling in the amount of $15,863.97, in which plaintiff claims to have had an interest, and,

therefore, cut off all rights of plaintiff, as possible subrogee of defendant, to recover that salvage from Wells and Ebeling and, thus, defendant has "enriched" itself to that extent, at plaintiff's expense. It seems to me that the trouble with the theory is that plaintiff, as insurer or surety, had only a "contingent" interest, as a possible subrogee, in the counterclaim for the fidelity loss and would not acquire a "vested right" therein until it "paid" the loss under the bond, General Exchange Ins. Corp. v. Young, 357 Mo. 1099, 212 S.W.2d 396, which it never did, and, therefore, it never acquired any vested right or interest in the subject of that counterclaim, and it would seem to follow that defendant was free to do with it as it chose, and defendant's act, in stipulating for extinguishment of the counterclaim in exchange for extinguishment by Wells and Ebeling of the claims of their complaint, would not, in the circumstances here, take or use any property of the plaintiff nor, hence, result in defendants enrichment at the expense of the plaintiff. While it is very probably true, under the terms of the bond and the law, that defendant, having extinguished the counterclaim for the fidelity loss—and thus deprived plaintiff of any possible right of subrogation—could not recover, because of that estoppel, in an action against the plaintiff upon the bond for the fidelity loss; but defendant is making no attempt to recover upon the bond and that question is not here involved. It seems to me that plaintiff is in the position of having voluntarily loaned the $15,863.97 to defendant to be repaid only if certain contingencies occurred, and they have not occurred. These reasons leave a serious question in my mind as to whether the third count of plaintiff's second amended complaint states a claim upon which relief can be granted. However the motion before me, as respects Count III, is to require a more definite statement and I do not think that motion is well taken.

I conclude that defendant's motion to strike Counts I and II of plaintiff's second amended complaint is good, and should be, and the same is hereby, sustained, but that defendant's motion for a more definite statement of Count III of plaintiff's second amended complaint is not good and should be, and it is hereby, denied.